UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HDI-GERLING AMERICA INSURANCE
COMPANY, as successor in interest to
Gerling America Insurance Company,

                               Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY,

                               Defendant.
---------------------------------------------------------

LIBERTY MUTUAL INSURANCE COMPANY,

                               Third-Party Plaintiff,

v.

DYNAMIC PAINTING CORPORATION,
ROMANO ENTERPRISES OF NEW YORK
INC., and DYNAMIC PAINTING
CORPORATION/ROMANO ENTERPRISES
OF NEW YORK INC., A JOINT VENTURE,

                               Third-Party Defendants.
_____

**REPORT AND RECOMMENDATION**

10-CV-00740(S)(M)

       Before me is the motion by defendant/third-party plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") [74] for summary judgment against plaintiff HDI-Gerling America Insurance Company ("HDI-Gerling"). For the following reasons, I recommend that the motion be granted.

# BACKGROUND

This action arises from a September 27, 1999 accident in which R.L Floyd, an employee of Dynamic Painting Corporation and/or Dynamic/Romano Joint Venture, allegedly sustained personal injuries while painting the Grand Island Bridge pursuant to a contract with the New York State Thruway Authority ("NYSTA").

## The OCP Policy

On August 18, 1997 the NYSTA entered into an "Engineering Agreement for Construction Inspection" with KTA-Tator Engineering, P.C. ("KTA") in connection with the Grand Island Bridge Project (the "Project") [78-5]. Pursuant to this agreement, KTA secured an Owners' and Contractors' Protective Liability Policy, No., TF1-181-015293-357 ("OCP Policy") identifying the NYSTA as the Named Insured. Liberty Mutual's Local Civil Rule 56.1 Statement [74-1], ¶7.

The relevant portion of the OCP Policy states:

"b.  This insurance applies to 'bodily injury' and 'property damage' only if:

   (1)  The 'bodily injury' or 'property damage' is caused by an 'occurrence' and arises out of:

      (a)  Operations performed for you by the 'contractor' at the location specified in the Declarations; or

      (b)  Your acts or omissions in connection with the general supervision of such operations".

OCP Policy [74-5], Owners and Contractors Protective Liability Coverage Form - Coverage for Operations of Designated Contractor, Section I, ¶1(b).

KTA is defined by the OCP Policy as the "contractor". Id., Section V, ¶3.

The OCP Policy also contains a notice provision, which states:

> "4. **Duties in The Event of Occurrence, Claim or Suit**
>
> a. You must see to it that we are notified as soon as practicable of an 'occurrence' which may result in a claim . . . .
>
> b. If a claim is made or 'suit' is brought against any insured, you must: . . .
>
> (2) Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or 'suit' as soon as practicable . . . .
>
> e. Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us."

Owners and Contractors Protective Liability Coverage Form - Coverage for Operations of Designated Contractor [74-5], p. 6 of 9, Section IV, ¶4.[1]

**The Court of Claims Action**

In or about November 2001, Mr. Floyd commenced an action against the NYSTA in the New York State Court of Claims, entitled <u>R.L. Floyd v. NYSTA</u>, Claim No. 10526.

---

[1] Paragraph (e) is located in the portion of the OCP Policy [74-5] entitled "New York Changes Owners and Contractors Protective Liability Coverage Form". <u>Id</u>. ¶B.

Complaint [1], pp. 6-11 of 13; Liberty Mutual's Local Civil Rule 56.1 Statement [74-1], ¶1. The Notice of Claim alleges in relevant part that "another employee of Dynamic Painting Corporation and/or Dynamic/Romano Joint Venture was rigging and a sling slipped off the beam falling striking [Mr. Floyd] causing personal injury". Notice of Claim [74-4], ¶3.

**The NYSTA-KTA Action**

In October of 2004 the NYSTA, HDI-Gerling's insured,[2] commenced an action against KTA-Tator in New York State Supreme Court seeking indemnification and/or contribution in connection with the Court of Claims Action [78-9]. KTA is insured pursuant to a Commercial General policy ("CGL") issued by Liberty Insurance Corporation ("Liberty"). By letter from Nancy Dick dated January 21, 2005 (on Liberty Mutual letterhead), Liberty disclaimed coverage to KTA on the ground that "Engineers Professional Liability is specifically excluded which is the exact action that is being claimed against your company for this loss" [78-11]. This prompted KTA to commence a third-party action against Liberty in June 2005, alleging that Liberty was obligated to provide it with coverage pursuant to the CGL Policy in the NYSTA-KTA action [78-12].

In December 2005, Liberty commenced a second third-party action in the NYSTA-KTA action against Continental Insurance Company ("Continental"), another insurer of KTA [78-14]. In response, Continental counterclaimed on February 2, 2006, alleging that the OCP Policy "provides primary or concurrent coverage to KTA . . . and/or [NYSTA] for the claims and damages relating to the accident of R.L. Floyd" [78-15], ¶37. According to Liberty

---

[2] HDI-Gerling insures the NYSTA pursuant to a OCP policy [74-9].

Mutual, this was the first suggestion by anyone that it owed the NYSTA a duty to defend under the OCP Policy. Lord Declaration [74-2], ¶14. Accordingly, by letter dated February 16, 2006 to the NYSTA, Liberty Mutual disclaimed any duty to defend or indemnify the NYSTA in the Court of Claims Action, based upon late notice [74-7].

By Decision and Order dated September 15, 2006, New York State Supreme Court Justice Patrick H. NeMoyer granted summary judgment to KTA in its third party-action against Liberty to the extent that it sought a declaration that Liberty was obligated to defend KTA in the NYSTA-KTA action [78-16]. Justice NeMoyer explained that Liberty had:

> "denied coverage and defense under an engineers professional liability exclusion in the policy. This exclusion provided that there was no insurance coverage for bodily and/or personal injury arising out of the rendering or failure to render professional services by KTA. The policy exclusion further stated that professional services included (1) 'preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications', and (2) 'supervisory, inspection, architectural or engineering activities.' Despite this exclusionary language, the policy also provided that it would provide coverage for 'bodily injury' or 'property damage to which this insurance applies.'
> . . .
>
> In addition to allegations of negligence based upon KTA's professional services, the NYSTA's complaint against KTA also alleges ordinary negligence based upon tortious acts by KTA. Based upon these allegations, it is evident that the complaint contains allegations, which, if proven, could possibly lead to coverage under Liberty's policy, and are outside of the policy's professional services exclusion." Id., pp. 2-4.

Justice NeMoyer's Decision was affirmed by the Appellate Division, Fourth Department on October 3, 2007 [78-17].

By Decision and Order dated April 19, 2011, Justice NeMoyer granted KTA's motion for summary judgment against the NYSTA and dismissed its complaint against KTA in its entirety, concluding that KTA had "established that the accident did not arise or result from its work" and that "there was no showing of a causal connection between any act or omission of KTA and the plaintiff's injuries". [74-6], p. 10. Specifically, Justice NeMoyer held that:

> "KTA demonstrated as a matter of law that it bore no responsibility for any defective or unduly dangerous condition at the work site and further lacked authority to direct, supervise, or control the rigging work that led to the claimant's injury . . . . Indeed KTA has shown in support of its motion that its responsibilities on the project did not include directing or prosecuting any work on the project. Moreover, far beyond demonstrating that it had no more than a general duty to enforce safety standards at the work site . . . KTA has shown that its explicit contractual duties on the project did not even extend as far as the general enforcement of safety standards on the job." Id., p. 6.

**This Action**

In this action, HDI-Gerling initially sought a declaration that the NYSTA was entitled to defense and indemnification in the Court of Claims action from Liberty Mutual. Liberty Mutual's Local Civil Rule 56.1 Statement [74-1], ¶1. However, in light of Justice NeMoyer's April 19, 2011 decision in the NYSTA-KTA action, HDI-Gerling has withdrawn its claim for indemnification, and now seeks only defense costs incurred in the Court of Claims action "from February 2006 through April 2011". December 20, 2012 Stipulation [75]; January 10, 2013 Text Order [77]; HDI-Gerling's Memorandum of Law [79], p. 7 ("Gerling . . . has

withdrawn the claims in this litigation for indemnity coverage, if ever necessary, and for a share for defense costs from Liberty after April 19, 2011").[3]

Liberty Mutual moves for summary judgment on the remaining aspect of HDI-Gerling's claims, arguing that the allegations made against the NYSTA in the Court of Claims action did not trigger a duty to defend under the OCP Policy, and that even if they did, it properly disclaimed coverage based on late notice of occurrence. Liberty Mutual's Memorandum of Law [74-12], Point I and II.

## ANALYSIS

**A.     Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. "'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could

---

[3] It is unclear whether the reference to February 2006 in the Stipulation [75] is correct since HDI-Gerling now argues that "*once triggered in 2005*, Liberty must pay for a share of the defense of NYSTA until there is a final determination on liability terminating the defense obligation to both NYSTA and KTA-Tator". HDI-Gerling's Memorandum of Law [79], pp. 7-8 (emphasis added).

reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

**B.      Liberty Mutual Did Not Owe The NYSTA A Duty to Defend**

Even though it has now been established in the NYSTA-KTA action that KTA had no responsibility (either directly or indirectly) for the circumstances that gave rise to Mr. Floyd's injuries, "an insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage". Fitzpatrick v. American Honda Motor Co., Inc., 78 N.Y.2d 61, 65 (1991).

"The duty to defend insureds - long recognized as broader than that to indemnify - is derived from the allegations of the complaint and the terms of the policy." International Chemical Corp. v. Nautilus Insurance Co., 2012 WL 32963, *4 (W.D.N.Y. 2012) (Skretny, J.). "If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." Id. "Although the duty to defend will not be imposed through a 'strained, implausible reading of the complaint 'that is linguistically conceivable but tortured and unreasonable,' . . . a defense obligation may be avoided only where there is 'no possible factual or legal basis' on which an insurer's duty to indemnify under any provision of the policy could be held to attach". Century 21, Inc. v. Diamond State Insurance Co., 442 F.3d 79, 82-83 (2d Cir. 2006).

The duty to defend also arises "where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.'" Allianz Insurance Co. v. Lerner, 416 F.3d

109, 115 (2d Cir. 2005) (*quoting* Frontier Insulation Contractors, Inc. v. Merchants Mutual Insurance Company, 91 N.Y.2d 169, 175 (1997)). *See* Maple Grove Corp. v. Colony Insurance Co., 2012 WL 4049618, *5 (W.D.N.Y.) (Foschio, M.J.), adopted, 2012 WL 4086718 (W.D.N.Y 2012) (Skretny, J.).[4] "Whether an insurer has an obligation to defend is a question of law for the courts." Maple Grove Corp., 2012 WL 4049618, *5.

HDI-Gerling does not dispute that the Notice of Claim does not mention or refer to KTA. Liberty Mutual's Local Civil Rule 56.1 Statement [74-1], ¶5; HDI-Gerling's Opposing Statement [78-30], ¶5. Nor does it argue that the allegations contained in the Notice of Claim, standing alone, gave rise to a duty to defend. Indeed, HDI-Gerling concedes that Liberty Mutual only "had the duty to defend NYSTA under the OCP policy . . . *once it received notice that the claim arose from the operations of KTA-Tator in January of 2005*." HDI-Gerling's Memorandum of Law [79], p. 6 (emphasis added); p. 7 ("*Coupling* the allegations from the Court of Claims action with the allegations made in Supreme Court action, Liberty had sufficient 'particulars' to identify NYSTA as an insured under is [*sic*] own OCP policy in January of 2005" (emphasis added)).

Instead, HDI-Gerling attempts to excuse the absence of such allegations in the Notice of Claim by arguing that since the Court of Claims of is a court of limited jurisdiction, KTA "could never have been made a defense party by the plaintiff or by NYSTA". HDI-Gerling's Memorandum of Law [79], p. 7. Even if the jurisdictional restrictions of the Court of

---

[4] "Choice of law is the first question a federal court sitting in diversity must address. Here, both parties rely on New York law in their briefs and have thus implicitly agreed that New York law governs." Boctor v. Czekus, 2012 WL 1835548, *2 n. 4 (W.D.N.Y. 2012) (Skretny, J.).

Claims precluded Mr. Floyd from naming anyone other than the NYSTA as a defendant, this did not prohibit the inclusion of facts in the Notice of Claim creating an inference that there was some connection between Mr. Floyd's accident and KTA's work on the Project. Nor did anything preclude Mr. Floyd from asserting a claim against KTA in a different forum, but it is undisputed that he did not do so. Liberty Mutual's Local Civil Rule 56.1 Statement [74-1], ¶6; HDI-Gerling's Opposing Statement [78-30], ¶6.

HDI-Gerling points to no facts actually known to Liberty Mutual indicating that there was possible coverage to the NYSTA under the OCP Policy. Although HDI-Gerling argues that in January of 2005 Liberty Mutual possessed "suit papers and extrinsic evidence establishing its obligation to defend NYSTA and KTA", it does not specifically identify this extrinsic evidence. HDI-Gerling's Memorandum of Law [79], p. 4.[5] Moreover, the allegations in the NYSTA-KTA action do not constitute *facts*, and were not known by Liberty Mutual, as neither it nor the OCP Policy were implicated in that case. As highlighted by Liberty Mutual, other courts have rejected similar attempts. See Shriver Insurance Agency v. Utica Mutual Insurance Co., 323 Ill.App.3d 243, 247, 251 (Ill.App. 2 Dist. 2001) (applying Illinois law, which has a similar doctrine that "[a]n insurer must defend only if the complaint alleges facts within or potentially within the coverage of the policy, unless the insurer possesses knowledge of true but unpleaded facts that, when taken together with the allegations in the complaint, indicate that the claim is

---

[5] HDI-Gerling's counsel broadly states that "[b]efore and during the pendency of the Supreme Court declaratory judgment action against Liberty, counsel for NYSTA provided counsel for KTA-Tator all of the pertinent and supplemental information regarding the **Floyd** claim in the Court of Claims Action including medical records, bills of particulars, etc. This additional claims information was all eventually furnished to Liberty." Duggan Affidavit [78], ¶23. However, he does not attempt to identify any specific facts that would have indicated that Mr. Floyd's injuries were possibly attributable to KTA's work on the Project.

within or potentially within the policy coverage", held that "we do not believe that the [true but unpleaded facts] doctrine was meant to be applied to situations such as existed in this case, *i.e.*, where the only extraneous facts the insurer possessed were supplied by the insured. In such a situation the insurer has no way of knowing whether the facts are true unless it conducts an independent investigation"). Additionally, "HDI-Gerling does not cite to a single authority for the proposition that an inured's own unsustained allegations are 'extrinsic facts' that an insurance company should consider in determining to provide insurance coverage to that same insured for another lawsuit." Liberty Mutual's Reply Memorandum of Law [80-6], p. 4.

   Although HDI-Gerling places heavily reliance on the alleged preclusive effect of Justice NeMoyer's September 18, 2006 Decision and Order that Liberty owed KTA a duty to defend, it overlooks the fact that that case involved the CGL Policy - a different policy - which was issued by Liberty, a different insurer. The issues which Justice NeMoyer addressed were also distinct. He was called upon to address the applicability of a policy exclusion unique to the CGL Policy,[6] an issue not before me, and whether Liberty owed KTA defense in the NYSTA-KTA action based upon the allegations of that case, not the Court of Claims action. Therefore, I recommend that the remaining aspects of HDI-Gerling's Complaint be dismissed.

---

   [6] The insurer "bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." <u>Frontier Insulation Contractors, Inc.</u>, 91 N.Y.2d at 175.

### C. Liberty Mutual Properly Disclaimed Coverage

Even if I had found that Liberty Mutual owed a duty to defend the NYSTA in the Court of Claims action, I conclude that it properly disclaimed coverage. There is no dispute that the OCP Policy required the NYSTA to provide notice "as soon as practicable" of an "'occurrence' which may result in a claim". [74-5] p. 6 of 9, Section IV, ¶4. It is also undisputed that the Court of Claims action against the NYSTA was commenced on or about November 7, 2001. What the parties dispute is when Liberty Mutual received notice that NYSTA was seeking coverage for the Court of Claims action. Whereas Liberty Mutual alleges that notice was first received when Continental counterclaimed in the NYSTA-KTA action on or about February 2, 2006 alleging that the OCP Policy provided primary or concurrent coverage to the NYSTA for Mr. Floyd's accident (Liberty Mutual's Memorandum of Law [74-12], p. 16), HDI-Gerling alleges that "written notice was provided to Liberty with sufficient particularity to identify NYSTA as a Liberty insured in 2005", when, at that time, KTA provided "all of the pleadings involving the pending claim". HDI-Gerling's Memorandum of Law [79], pp. 8-9.

HDI-Gerling does not dispute that notice to Liberty Mutual was untimely under either scenario, nor does it dispute that if Liberty Mutual first received notice on February 2, 2006 (as Liberty Mutual argues), then it timely disclaimed coverage on February 16, 2006. Instead, it argues that Liberty Mutual's delay from January 2005 until February 16, 2006 in disclaiming coverage rendered the disclaimer ineffective as a matter of law pursuant to NY Insurance Law §3420(d). HDI-Gerling's Memorandum of Law [79], pp. 8-9.

"[T]he insured's failure to provide notice within a reasonable time without a valid excuse for delay constitutes a complete defense to a third-party complaint by the insured to

compel the insurer to bear the costs of defense in the underlying action." State of New York v. Blank, 27 F.3d 783, 793 (2d Cir.1994), abrogated on other grounds, Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Casualty Co., 702 F.3d 118, 122 (2d Cir. 2012).[7] Even where the insurer has not in the first instance received timely notice, it "is obligated to give written notice of a disclaimer of coverage 'as soon as is reasonably possible,' . . . measured from the time that the insurer has sufficient information to disclaim coverage in good faith." Webster ex rel. Webster v. Mount Vernon Fire Insurance Co., 368 F.3d 209, 216 (2d Cir. 2004) (*quoting* N.Y. Insurance Law §3420(d) (McKinney 2000)). "'A failure by the insurer to give such notice as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial.'" U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 369 F.3d 102, 107 (2d Cir. 2004) (*quoting* Hartford Insurance Co. v. County of Nassau, 46 N.Y.2d 1028, 1029 (1979)).

According to HDI-Gerling, "[f]or purposes of summary judgment, there is no difference between the notice given to Liberty for defense coverage under the OCP policy and the General Liability policy." Duggan Affidavit [78], ¶38. It again relies upon Justice NeMoyer's Decision and Order to argue that "Liberty had full knowledge that Mr. Floyd's accident was alleged to have arisen from the operations of KTA". Id.

I disagree. It is undisputed that NYSTA never itself provided written tender of the Court of Claims action to Liberty Mutual. KTA's tender of the NYSTA-KTA action to Liberty

---

[7] "Since the subject policy was issued before January 17, 2009, which was the effective date of an amendment to the Insurance Law requiring an insurer to establish prejudice in order to effectively disclaim coverage based on late notice of an occurrence, [the insurer] does not have to establish that it was prejudiced by the failure of the [the insured] to comply with the notice provision in order to disclaim coverage". Chiarello v. Rio, 101 A.D.3d 793, 795 (2d Dept. 2012).

did not constitute notice of the Court of Claims action to Liberty Mutual. The OCP Policy states that "[n]otice given *by or on behalf of the insured*, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us." Owners and Contractors Protective Liability Coverage Form - Coverage for Operations of Designated Contractor [74-5], p. 6 of 9, Section IV, ¶4(e) (emphasis added).[8] There is nothing in the record before me to indicate that KTA's tender of the NYSTA-KTA action under its CGL Policy was intended to or did constitute notice on behalf of the NYSTA. "An insured may rely on notice from another party only if the parties are united in interest in the lawsuit, but not if they are adverse in the underlying suit." Judlau Contracting, Inc. v. Westchester Fire Insurance Co., 2009 WL 2356887, *4 (NY Sup. NY Cty. 2009). *See* Tower Insurance Co. of New York v. Rong Rong Sun, 105 A.D.3d 561, 564 (1st Dept. 2013) (notice given to an insurer by its insured's alleged co-torfeasor was not imputed to the injured party). However, here, since the NYSTA instituted suit against KTA in the NYSTA-KTA action, their interests were rendered adverse.

  Even assuming that KTA could or did give notice of occurrence on behalf of the NYSTA, the notice provided by KTA was to Liberty, a different insurer, under the CGL Policy, a different insurance policy, and sought coverage for the NYSTA-KTA action, a different action. Although the January 21, 2005 disclaimer letter in the NYSTA-KTA action was on Liberty Mutual letterhead, it only references the CGL Policy and KTA [78-3]. HDI-Gerling offers no

---

[8] Paragraph (e) is located in the portion of the OCP Policy [74-5] entitled New York Changes Owners and Contractors Protective Liability Coverage Form. Id. ¶B.

evidence that Liberty Mutual received any notice of occurrence under the OCP Policy prior to Continental's counterclaim.

"Under New York insurance law, separate policies - whether issued by the same carrier or different carriers - create independent obligations to provide separate notices of the same occurrence". U.S. Underwriters Insurance Co. v. Landau, 2010 WL 2517196, *5 (E.D.N.Y. 2010). *See* Sorbara Construction Corp. v. AIU Insurance Co., 11 N.Y.3d 805, 806 (2008) ("Each policy imposes upon the insured a separate, contractual duty to provide notice"). Therefore, KTA's communications with Liberty concerning the CGL Policy did not constitute notice to Liberty Mutual under the OCP Policy. *See* Sorbara, 11 N.Y.3d at 806 ("notice provided under the workers' compensation policy at the time of the incident did not constitute notice under the liability policy even though both policies were written by the same carrier").[9]

**CONCLUSION**

For these reasons, I recommend that Liberty Mutual's motion for summary judgment [74] be granted. Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by August 2, 2013 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

---

[9] Since I have concluded that Liberty Mutual first received notice under the OCP Policy on February 2, 2006, I need not reach HDI-Gerling's arguments concerning the effectiveness of Liberty's February 16, 2006 disclaimer under NY Insurance Law §3420(d).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.


Dated: July 16, 2013                         /s/ Jeremiah J. McCarthy
                                                                              JEREMIAH J. MCCARTHY
                                                                              United States Magistrate Judge